**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **04-CR-237A**

**CARMALLA ARRINGTON,**

**Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Carmalla Arrington ("the defendant"), is charged in a multicount indictment with having violated 18 U.S.C. § 844(e). The defendant has filed a motion to suppress evidence and a motion to strike sentencing allegations. (Docket #15).

In opposing the motion to suppress evidence, the government asserts that the defendant "has failed to establish standing to challenge" the searches at issue. (Docket #16, ¶ A.1). In the alternative, the government asserts that "even if the defendant establishes standing to contest the search of her trash, the searches were

constitutionally valid and therefore, the defendant's motion to suppress the items seized from her garbage should be denied." (Docket #16, ¶ A.2).

As to defendant's motion to strike sentencing allegations, "the government agrees that the sentencing factors included in the indictment should be stricken, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure." (Docket #16, ¶ C). Therefore, it is RECOMMENDED that defendant's motion to strike the sentencing allegations set forth in the indictment be GRANTED. As a result, only the defendant's motion to suppress evidence will be discussed herein.

## FACTS

The defendant resides at 180 Sanders Road, Apartment 3, in Buffalo, New York. This is an apartment complex which is owned by Kenmore Development Company. (Docket #16, Exhibit A, ¶ 3). On or about March 1, 2004, letters were mailed through the U.S. Postal Service to various employees of Daemen College wherein it was anonymously asserted that an individual by the name of Hassan Fares "was planning to use an explosive device at the Daemen College graduation ceremony scheduled for May 2004." (Docket #15, ¶ 5). "On or about May 18, 2004, additional letters were sent to the Federal Bureau of Investigation, Erie County Sheriff's Department, Buffalo Police Department, WIVB-TV Channel 4, and Kleinhans Music Hall" identifying the same individual "as planning to set off an explosive device at the Daemen College graduation ceremony being held at Kleinhans Music Hall on May 22,

2004."  (Docket #15, ¶ 6).

As a result of these letters, the Federal Bureau of Investigation ("F.B.I.") conducted an investigation into the matter and ultimately focused on the defendant as the person who may have sent the letters.  On May 24, 2004, Special Agent Mercer of the F.B.I. "met with two maintenance employees of the Kenmore Development Company" and requested the employees to advise him "when they collected trash from 180 Sanders Road, Apartment 3."  (Docket #16, Exhibit A, ¶ 3).

On May 27, 31, June 3 and 10, 2004, maintenance employees of the Kenmore Development Company advised the F.B.I. that they had picked up trash "from outside 180 Sanders Road, Apartment 3" consisting of garbage bags, which on each occasion were turned over to the F.B.I. "at the complex's dumpster located near 140 Sanders Road."  (Docket #16, Exhibits A and B).

Various materials in the form of paper notes with handwritten notations, portions of which contained the name of Hassan Fares, were retrieved by the F.B.I. from the trash removed from the defendant's residence.  Also retrieved were "miscellaneous parts, many broken, for some type of printer, typewriter or word processor," a glass ashtray "containing what appear[ed] to be burnt pieces of paper," one of which had 'May 18,' printed/typed on it."  (Docket #1, Affidavit of Special Agent Mercer sworn to June 25, 2004, ¶ 11).  Thereafter, on June 16, 2004, F.B.I. agents interviewed the defendant regarding the aforesaid letters, and when "confronted with

the items found in trash over the previous three weeks, [the defendant] stated that the items did not belong to her and that she had no idea how those items ended up in her trash."  (Docket #1, Affidavit of Special Agent Mercer sworn to June 25, 2004, ¶ 12).

On June 15, 2004, a search warrant for the premises of the defendant at 180 Sanders Road, Buffalo, New York was issued by this Court based on the affidavit of Special Agent Mercer sworn to June 15, 2004.  "Pursuant to that warrant, agents seized several items relating to the individual named in the threat letters, as well as a handwritten document which [was believed to be] a working draft of the letters that were sent to Daemen College employees in March 2004."  The defendant, "when shown a copy of this handwritten document and questioned about it, stated that the document did not belong to her and that she had no idea why it was found in her bedroom." (Docket #1, Affidavit of Special Agent Mercer sworn to June 25, 2004, ¶ 13).

## DISCUSSION AND ANALYSIS

The defendant argues that the "trash covers" conducted by the F.B.I. on May 27, May 31, 2004, June 3, June 7 and June 10, 2004 were in violation of her Fourth Amendment rights under the United States Constitution.  Furthermore, she argues, even if the "trash covers" were deemed legal, "the items found [did] not support a finding of probable cause for a search warrant" and therefore, "all items seized must be suppressed."  (Docket #15, ¶¶ 11, 15-20).

**A. The Issue Of Standing:**

The government asserts that the defendant "has failed to establish standing to challenge" the searches at issue because she "has not demonstrated a legitimate expectation of privacy in the area searched or the property seized." (Docket #16, ¶ A.1).

The defendant claims that she has "standing for a motion to suppress evidence seized from and within 180 Sanders Road, Apartment 3, Buffalo, New York 14216 (Docket #15)" because she has "lived at the aforementioned address since 1987 and lived there in May and June, 2004." (Docket #20).

> Neither possession nor ownership of property establishes a legitimate expectation of privacy unless the party vigilantly protects the right to exclude others. *United States v. Salvucci*, 448 U.S. 83, 90-93, 100 S.Ct. 2547, 2552-54, 65 L.Ed.2d 619 (1980); *United States v. Rahme*, 813 F.2d 31, 34-35 (2d Cir. 1987).

*United States v. Torres*, 949 F.2d 606, 608 (2d Cir. 1991); *Gudema v. Nassau County*, 163 F.3d 717, 722 (2d Cir. 1998).

The United States Court of Appeals for the Second Circuit has expressly held that:

> It is well settled that an otherwise legitimate privacy interest may be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy. (citation omitted).

*United States v. Torres, supra*; *Gudema v. Nassau County, supra.*

When the defendant placed her trash in an open area of the apartment complex for the express purpose of having it picked up and disposed of by the employees of Kenmore Development Company, she abandoned it. As a result, she "could have no reasonable expectation of privacy" in the contents contained within the garbage bags that she discarded. *California v. Greenwood*, 486 U.S. 35, 40-41 (1988).

The defendant has not replied to or attempted to contradict the sworn statement of Special Agent Mercer wherein he states in his affidavit sworn to June 25, 2004 as follows:

> When confronted with the items found in the trash over the previous three weeks, ARRINGTON stated that the items did not belong to her and that she had no idea how those items ended up in her trash.

(Docket #1, ¶ 12).

Therefore, I find that any interest or expectation of privacy in the items seized from the trash placed for disposal at the premises located at 180 Sanders Road, Apartment 3, on May 27 and 31, June 3, 7 and 10, 2004 by the defendant was abandoned by her as evidenced by her disclaimer of ownership or knowledge as to the contents of the trash seized to Special Agent Mercer.

As a result of the foregoing, I find that the defendant does not have standing to object to the "trash covers" that were conducted by the F.B.I. in May and June 2004 or the seizure of items from such trash seized in May and June 2004 and

therefore RECOMMEND that defendant's motion to suppress that evidence seized be DENIED.

**B. The Validity Of The Search Warrant:**

Since it has now been decided by this Court that the "trash covers" were lawful, the defendant's argument as to the validity of the search warrant of June 15, 2004 will be addressed.

The defendant argues that "under the totality of the circumstances, the search warrant was not supported by probable cause" since "nothing about the items seized during the trash covers in any way implicates [her] in the instant offenses" and therefore, "all items seized must be suppressed." (Docket #15, ¶¶ B.15, 16, 20).

In determining whether probable cause exists for the issuance of a warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." (citation omitted). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (citation omitted.)

> In *Aguilar,* we required only that “the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was “credible” or his information “reliable.” (citation omitted).
>
> As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant’s “veracity,” “reliability,” and “basis of knowledge,” nor that these inquiries be elaborate exegeses of an informant’s tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.
>
> * * *
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis . . . for [conclud[ing] “that probable cause existed. (citation omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983).

As the Court of Appeals for the Second Circuit stated:

> A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. “Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather

> than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to
>
> make a practical, commonsense decision whether, given all the circumstances se in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
>
> *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

In his affidavit sworn to June 15, 2004 in support of the application for the search warrant at issue, Special Agent Mercer described in substantial detail the "investigation" that had been conducted in response to the anonymous letters that had been sent to employees of Daemen College, the Erie County Sheriff's Department, WIVB-TV, the Buffalo Police Department and the F.B.I. He specifically describes the letter dated May 18, 2004 received by the Buffalo Office of the F.B.I. on May 19, 2004 and the envelope in which it was sent including "the word 'URGENT' printed/typed and highlighted in yellow on its front." The letter referred to a "Hassan Fares (Nursing Student at Daemen College)" as being linked to terrorist activity and requesting that a "criminal background check" of Fares be conducted and also references "graduation May 22, 2004" and the "set[ting] off explosive." An interview of Fares was conducted by

the F.B.I. on May 19, 2004, and Fares identified the defendant “as someone with whom [he] had a recent falling out” and that they “were former classmates at Daemen College” and that the defendant was one of the few people outside his family that he shared information with regarding” prior family “arrests.” A review of the letters sent to the Daemen College employees make reference to “Hassan Fares (Nursing Student) and an allegation that Fares and others “have been planning to set up explosive devices for graduation May 2004.”

On May 20, 2004, the defendant was interviewed by the F.B.I., and she admitted “knowing and being friends with Fares” and “having a computer and printer in her residence.”

Special Agent Mercer’s affidavit of June 15, 2004 further describes the “miscellaneous parts, many broken, for some type of printer, typewriter or word processor;” a “functioning Office Max highlighter, yellow in color;” pieces of paper “containing a handwritten note in pencil” which contained the following: “san Fares and planning exp DAEMEN Gr;” a glass ashtray “containing what appears to be burnt pieces of paper,” one of which has the date “‘MAY 18' printed/typed on it” and “printer cartridges” that were retrieved from the “trash cover” of defendant’s apartment at 180 Sanders Road, Apartment 3. (Affidavit of Special Agent Mercer, sworn to June 15, 2004, ¶¶ 6, 9, 12, 13, 14).

The pieces of paper containing the notations “san Fares and planning exp

DAEMEN Gr” and the date “May 18" certainly have enough similarity and relationship to the words contained in the letters actually sent, to wit, “Hassan (“san”) Fares;” (“Nursing Student at DAEMEN”); “planning to set off explosive” (“planning exp”); “graduation” (“Gr”). An agent’s training and experience can be considered in determining whether probable cause exists. *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987). In considering the totality of the circumstances as developed by the F.B.I. in its investigation, it was reasonable to conclude that the letters in question were prepared and sent by the defendant and therefore, there was probable cause to believe that the items described in the application for the search warrant at issue would be found in the premises of the defendant. The defendant has failed in meeting her “heavy burden” of proving otherwise and therefore, it is RECOMMENDED that her motion to suppress the evidence seized pursuant to the search warrant of June 15, 2004 be DENIED.

Furthermore, even if it were assumed, *arguendo*, that probable cause for the warrant was lacking at the time of its issuance, that does not mandate suppression of the evidence seized pursuant to that warrant. As the United States Supreme Court held in *United States v. Leon*, 468 U.S. 897 (1984):

> [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.

* * *

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." (citation omitted). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 918, 921.

## CONCLUSION

Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to suppress all of the evidence seized by the F.B.I. be DENIED in its entirety and that defendant's motion to strike the sentencing allegations contained in the indictment be GRANTED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2**

**(concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

/s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:** **Buffalo, New York**
**September 16, 2005**